O

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JEAN CARLO ARGUELLO, | ) | NO. CV 14-5710-MAN |
|           Petitioner, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
|     v. | ) | DENYING HABEAS RELIEF AND DENYING |
| WARDEN, | ) | A CERTIFICATE OF APPEALABILITY |
| | ) | |
|           Respondent. | ) | |
| | ) | |

On July 23, 2014, Petitioner, a prisoner in state custody, filed a habeas petition pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner initially raised four grounds for relief, but voluntarily dismissed Grounds One and Four after the Court advised him that they were unexhausted. Respondent then filed an Answer to Grounds Two and Three and lodged the pertinent state record ("Lodg."). Petitioner filed a Traverse. Both parties have consented to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The matter is submitted and ready for decision.

## PRIOR PROCEEDINGS

On June 3, 2011, a Los Angeles County Superior Court jury found Petitioner guilty of one count of second degree robbery in violation of California Penal Code § 211. The jury found that

Petitioner personally used a firearm within the meaning of California Penal Code § 12022.53(b) and (e)(1) and also found gang enhancement allegations under California Penal Code § 186.22(b)(1)(C) to be true. (Lodg. No. 1, Clerk's Transcript ("CT") 156.)  On January 20, 2012, the trial court sentenced Petitioner to 23 years in state prison.  (CT 184.)

Petitioner appealed.  (Lodg. No. 5.)  On June 8, 2013, the California Court of Appeal affirmed the judgment in an unpublished decision.  (Lodg. No. 8.)  Petitioner filed a petition for review in the California Supreme Court.  (Lodg. No. 9.)  On August 28, 2013, the California Supreme Court summarily denied review.  (Lodg. No. 10.)

## SUMMARY OF THE EVIDENCE AT TRIAL

The Court has reviewed the record in this case, as well as the California Court of Appeal's summary of the evidence in its opinion on direct appeal.  The state court's summary is consistent with the Court's own review of the record.  Accordingly, the Court has quoted it below to provide an initial factual overview.  The relevant portions of the trial record will be discussed further in connection with the Court's analysis of Petitioner's claims.[1]

On the early morning of September 13, 2009, Chad Chapman was returning to his home in Inglewood after work.  He stopped to purchase Newport cigarettes

---

[1]    In affirming the judgment against Petitioner, the California Court of Appeal discussed and summarized the evidence presented at trial.  (Lodg. No. 8 at 2-4.)  On federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  *See also* Schriro v. Landrigan, 127 S. Ct. 1933, 1939-40 (2007) ("AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'") (*citing* Section 2254(e)(1)); Pollard v. Galaza, 290 F.3d 1030, 1033, 1035 (9th Cir. 2002) (statutory presumption of correctness applies to findings by both trial courts and appellate courts).  The Section 2254(e)(1) presumption has not been shown to be inapplicable to the state appellate court's description of the evidence presented at Petitioner's trial.

and again to buy food at a Popeye's restaurant.  The food was in a Popeye's bag and the cigarettes were still sealed.  About 4:00 a.m. he parked his car on the street and crossed toward the gate to his building.  A car rapidly pulled up in front of his building and two men jumped out and headed toward him at a fast rate of speed. He was aware there was a driver in the car, but could not see whether the driver was male or female.  Chapman walked quickly toward the gate of his building in an effort to get away from the men, and he was able to open the security gate with a code.  He was accosted by the men inside the gate.  One had a knife and the other, identified by Chapman as [Petitioner], had a pump shotgun.  The men stood on either side of him.   The shotgun was aimed at Chapman's chest and head. [Petitioner] asked Chapman " 'Where are you from?' "  Chapman replied " 'I don't gang bang.' "

The man with the knife then took the Popeye's bag out of Chapman's hand and started going through his pockets, taking the cigarettes and $116 (two $50 bills and some other bills).  He handed a $50 bill to [Petitioner].  One or both of the men told Chapman to lift up his shirt and told him to say " 'Fuck NHP' ".  At that point, [Petitioner] was about five feet away.   The man with the knife felt around Chapman's neck and looked at Chapman's stomach and arm.   [Petitioner] also looked at Chapman's stomach.  When Chapman hesitated about complying with a demand to turn over his watch, [Petitioner] jerked the shotgun toward Chapman and asked the man with the knife whether he should shoot Chapman in the leg.  He had his finger on the trigger of the shotgun.  The man with the knife said "No."

Chapman thought he was going to be shot and was so frightened he urinated on himself.  He feared for his life.  He gave up the watch and asked the men to let him go because he had a son upstairs.  He repeated that he did not gang bang. [Petitioner] walked out of the gate toward the car.  The man with the knife

1   demanded Chapman's keys and cell phone.  Chapman said they were for work, and

2   he was allowed to keep them.  Chapman described the knife as having a black

3   handle and a blade about 11 inches long.

4

5   Before the men left, the man with the knife instructed Chapman to say

6   " 'Fuck NHP.' "  He repeated this demand several times.  Chapman understood NHP

7   referred to the Neighborhood Piru gang. The man with the knife also said " 'Fuck

8   NHP' " three or four times, and said this loudly enough to be heard from 17 to 20

9   feet away.  Chapman did not recall [Petitioner] saying " 'Fuck NHP' " and [Petitioner]

10  did not instruct Chapman to say that phrase.

11

12  The two men got back into the vehicle in which they had arrived, a white

13  Toyota Solara or Dodge Stratus.  It drove away.  Chapman called 911.  An officer

14  responded within five minutes.  Shortly after that, the officer took Chapman to make

15  a field identification.   Chapman identified [Petitioner] and the car which was

16  involved in the robbery.

17

18  Exhibit 2, a knife, had a blade and handle similar to the knife used in the

19  robbery, but Chapman did not recognize a jagged edge (a hook) on the top part of

20  exhibit 2.  He described the shotgun as silver and black and about three feet long.

21  It was not recovered.   Chapman identified a sealed Newport menthol box of

22  cigarettes later recovered from the car in which [Petitioner] was a passenger when

23  detained (People's exhibit 3), as the brand he had purchased just before the

24  robbery.  It appeared to be the same pack taken from him in the robbery.  Chapman

25  also identified [Petitioner] from a lineup.

26

27  . . . .  [Petitioner]'s girlfriend, Marisela Ricalde, testified to an alibi for the

28  time of the robbery.  [Petitioner] testified in his own defense and corroborated

4

Ricalde's version of their whereabouts at the time of the crime.  A defense expert testified about the inaccuracies of eyewitness identification under conditions like those presented here.

(Lodg. No. 8 at 2-4.)

## PETITIONER'S HABEAS CLAIMS

Ground Two: The trial court's refusal to bifurcate the gang enhancement allegations violated Petitioner's right to a fair trial under the Fourteenth Amendment.

Ground Three: Defense counsel's failure to object to the prosecution gang expert's testimony that Petitioner's gang had murdered police officers violated Petitioner's Sixth Amendment right to effective assistance of counsel.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a state prisoner whose claim has been "adjudicated on the merits" cannot obtain federal habeas relief unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See also* Harrington v. Richter, 131 S. Ct. 770, 784 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2).").

Clearly established federal law, for purposes of Section 2254(d)(1) review, means Supreme

Court holdings in existence at the time of the relevant state court decision. Greene v. Fisher, 132 S. Ct. 38, 44-45 (2011); *see also* Cullen v. Pinholster, 131 S. Ct. 1388, 1399 (2011); Richter, 131 S. Ct. at 785. Deference to a state court decision is required absent a Supreme Court decision that either "'squarely addresses'" the issue in the case before the state court or establishes a legal principle that "'clearly extends'" to a new context. Varghese v. Uribe, 736 F.3d 817, 824 (9th Cir. 2013) (citation omitted), *cert. denied*, 134 S. Ct. 1547 (2014); *see also* Richter, 131 S. Ct. at 786 (it "is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by" the Supreme Court) (citation omitted).

Under Section 2254(d)(1)'s first prong, a state court decision is "contrary to" clearly established federal law if the state court applies a rule that contradicts the relevant Supreme Court holdings or reaches a different conclusion than that reached by the high court on materially indistinguishable facts. Price v. Vincent, 123 S. Ct. 1848, 1853 (2003). "Thus, the 'contrary to' prong requires a direct and irreconcilable conflict with Supreme Court precedent." Murray v. Schriro, 745 F.3d 984, 997 (9th Cir. 2014).

Section 2254(d)(1)'s second, "unreasonable application" prong constitutes an objective standard that is not satisfied merely by finding that a state court erred in applying clearly established federal law. Richter, 131 S. Ct. at 785; Lockyer v. Andrade, 538 U.S. 63, 75, 123 S. Ct. 1166, 1174 (2003). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." Landrigan, 127 S. Ct. at 1939; *see also* Xiong v. Felker, 681 F.3d 1067, 1074 (9th Cir. 2012) (a finding that the state court was incorrect or erroneous is insufficient, because the Section 2254(d)(1) "inquiry is strictly limited to whether the state court's application of clearly established Supreme Court precedent" was objectively unreasonable).

"[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's

1  decision," habeas relief is precluded by Section 2254(d). _Richter_, 131 S. Ct. at 786 (citation

2  omitted); _see also id._ at 786-87 (a petitioner is required to prove that the state decision "was so

3  lacking in justification that there was an error well understood and comprehended in existing law

4  beyond any possibility for fairminded disagreement"). "Under § 2254(d), a habeas court must

5  determine what arguments supported or, [in the case of a silent denial of relief], could have

6  supported, the state court's decision; and then it must ask whether it is possible fairminded jurists

7  could disagree that those arguments or theories are inconsistent with the holding of a prior

8  decision of this Court." _Id._ at 786. A federal court has the authority to issue habeas relief only

9  "where there is no possibility fairminded jurists could disagree that the state court's decision

10  conflicts with [the Supreme Court's] precedents." _Id._; _see also_ _Murray_, 745 F.3d at 998 ("The

11  deferential standard imposed under AEDPA cloaks a state court's determination with

12  reasonableness, so long as 'fairminded jurists could disagree' as to whether a claim lacks merit.")

13  (citation omitted).

14

15  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court

16  rulings,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'" _Renico_

17  _v. Lett_, 130 S. Ct. 1855, 1862 (2010) (citations omitted). "[T]he purpose of AEDPA is to ensure

18  that federal habeas relief functions as a guard against extreme malfunctions in the state criminal

19  justice systems, and not as a means of error correction." _Greene_, 132 S. Ct. at 43 (citation and

20  quotation marks omitted); _see also_ _Richter_, 131 S. Ct. at 786 (the AEDPA standard was "meant

21  to be" "difficult to meet"). "The petitioner carries the burden of proof." _Pinholster_, 131 S. Ct. at

22  1398.

23

24  In the absence of any indication or state law procedural principles to the contrary, a state

25  court's decision is presumed to be on the merits. _Richter_, 131 S. Ct. at 784-85. The presumption

26  may be overcome when there is reason to think some other explanation for the state court's

27  decision is more likely. _Id._ at 785. Under the "look through" doctrine, federal habeas courts look

28  through a state court's silent decision to the last reasoned decision of a state court. _See_ _Ylst v._

1  Nunnemaker, 111 S. Ct. 2590, 2594 (1991) ("Where there has been one reasoned state judgment

2  rejecting a federal claim, later unexplained orders upholding the judgment or rejecting the same

3  claim rest upon the same ground.").

4

5  Petitioner presented his claims to the state courts on direct appeal.  (Lodg. Nos. 5, 9.)  The

6  California Court of Appeal denied his claims in a reasoned decision and the California Supreme

7  Court summarily denied review.  (Lodg. Nos. 8, 10.)  The Court, therefore, looks through the

8  summary denial by the California Supreme Court to the California Court of Appeal's reasoned

9  decision, and applies the AEDPA standard to that decision.  Ylst, 111 S. Ct. at 2594.

10

11                              **DISCUSSION**

12

13  **I.    GROUND TWO DOES NOT WARRANT FEDERAL HABEAS RELIEF.**

14

15  In Ground Two, Petitioner contends that the trial court denied him a fair trial under the

16  Fourteenth Amendment when it refused to bifurcate the gang enhancement allegation.  (Petition

17  at 5-6, Exs.)  Respondent contends that Petitioner's claim is barred by the anti-retroactivity

18  principles of Teague v. Lane, 109 S. Ct. 1060 (1989).  (Answer at 6-9.)  Respondent alternatively

19  contends that Ground Two does not constitute a cognizable federal claim and that the California

20  Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of,

21  clearly established federal law.  (Answer at 9-13.)

22

23        **A.    Background**

24

25  Before trial, Petitioner moved to bifurcate the criminal street gang allegation from the trial

26  of the robbery charge.  (Lodg. No. 3, Reporter's Transcript ("RT") 19.)  The trial court stated that

27  the gang aspect of the case was inexorably linked to the robbery, pointing out that gang

28  terminology was used to create fear in the victim. The trial court also found that the gang

1  evidence would not be unduly prejudicial when compared with the underlying facts of the robbery.

2  It found bifurcation unwarranted and denied the motion.  (RT 20.)

3

4        **B.    The California Court Of Appeal's Decision**

5

6        The California Court of Appeal first discussed California law regarding bifurcation of a gang

7  enhancement, as set forth in People v. Hernandez, 33 Cal. 4th 1040 (2004).  (Lodg. No. 8 at 8-9.)

8  A California trial court has discretion to bifurcate the trial of a gang enhancement allegation from

9  the trial of the charged offense, but the need for bifurcation is less than with prior conviction

10 allegations.  (Id. at 8, citing Hernandez, 33 Cal. 4th at 1048.)  Bifurcation is unnecessary when

11 the evidence supporting the gang enhancement allegation is also admissible to show guilt of the

12 charged offense.  (Id. at 9, citing Hernandez, 33 Cal. 4th at 1049-50.)  Even if some of the

13 evidence offered to prove the enhancement allegation would be inadmissible to prove the charged

14 offense, the trial court may deny bifurcation if other factors favor a unitary trial.  (Id., citing

15 Hernandez, 33 Cal. 4th at 1050-51.)

16

17       Applying these principles to Petitioner's case, the California Court of Appeal found that the

18 trial court did not abuse its discretion in denying the motion to bifurcate.  It noted that, in

19 Hernandez, the California Supreme Court upheld the trial court's refusal to bifurcate when "the

20 evidence showed the robbery was a coordinated effort by two gang members who used gang

21 membership as a means to accomplish the robbery."  The California Supreme Court reasoned that

22 the gang expert's testimony "helped the jury understand the significance of [one defendant's]

23 announcement of his gang affiliation, which was relevant to motive and the use of fear."  (Lodg.

24 No. 8 at 9, citing Hernandez, 33 Cal. 4th at 1051.)  The California Court of Appeal analogized this

25 case to Hernandez, stating:

26

27        Similarly here, Chapman's response to [Petitioner]'s challenge asking " 'where are

28        you from' " demonstrates that he knew he had been accosted by gang members

9

1   and was so fearful he urinated on himself.  The fact that [Petitioner] and his
2   accomplice checked him for tattoos supports the inference that they suspected
3   Chapman was a member of a rival gang, particularly since he fit the profile of
4   members of Neighborhood Piru.  Finally, the accomplice forced Chapman to repeat
5   the phrase "Fuck NHP" and repeated it several times himself.  Although [Petitioner]
6   did not make this statement, he had already interjected gang connotations into the
7   incident by asking Chapman, in gang parlance, for his gang affiliation.  As in
8   *Hernandez*, Detective Tripp's testimony helped the jury understand the significance
9   of this conduct, which was relevant to the fear element of robbery.  Under these
10  circumstances, the gang evidence was relevant both to the crime charged and the
11  enhancement, which were intertwined.  We find no abuse of discretion in denial of
12  the motion to bifurcate on this ground.

14  (Lodg. No. 8 at 9-10.)

16      **C.      The Applicable Clearly Established Federal Law**

18      The Supreme Court has never decided whether a trial court's failure to bifurcate trial on
19  a gang enhancement allegation implicates due process.  However, in <u>Spencer v. State of Texas</u>,
20  87 S. Ct. 648 (1967), the Supreme Court held that the Due Process Clause does not require
21  bifurcation when the prosecutor seeks to admit evidence of a defendant's prior convictions to
22  prove a sentence enhancement under a recidivist statute.  *Id.* at 654-55.  The Supreme Court
23  noted: "Two-part jury trials are rare in our jurisprudence; they have never been compelled by this
24  Court as a matter of constitutional law, or even as a matter of federal procedure."  *Id.* at 568.

26      In the context of joinder of counts and defendants, the Supreme Court has stated:
27  "Improper joinder does not, in itself, violate the Constitution.  Rather, misjoinder would rise to the
28  level of a constitutional violation only if it results in prejudice so great as to deny a defendant his

1  Fifth Amendment right to a fair trial." United States v. Lane, 106 S. Ct. 725, 730 n.8 (1986).  The

2  Ninth Circuit has declared that this comment constitutes dicta, because Lane concerned joinder

3  under the Federal Rules of Criminal Procedure and no constitutional issue was before the Supreme

4  Court. Collins v. Runnels, 603 F.3d 1127, 1132 (9th Cir. 2010).  There is, however, a line of Ninth

5  Circuit decisions holding that misjoinder of counts can be grounds for habeas relief, if it renders

6  the defendant's trial fundamentally unfair.  See Davis v. Woodford, 384 F.3d 628, 638 (9th Cir.

7  2004); Sandoval v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2000), Bean v. Calderon, 163 F.3d

8  1073, 1086 (9th Cir. 1998); Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991); see also

9  Mejia v. Foulk, CV 13-9465-AB (RNB), 2015 WL 391688, at *10 n.7 (C.D. Cal., Jan. 28, 2015)

10  (explaining that these cases applied the pre-AEDPA standard of review, or relied on cases applying

11  the pre-AEDPA standard of review, based either on dictum in Lane or on Ninth Circuit precedent

12  usupported by Supreme Court authority).

13

14        **D.**    **Petitioner's Claim Is Not Barred By** *Teague*

15

16        In Teague, the Supreme Court held that, with two narrow exceptions, a new rule of

17  constitutional law cannot be applied retroactively on federal collateral review to disturb a state

18  conviction that became final before the new rule was announced.  Teague, 109 S. Ct. at 1075-76

19  (plurality opinion); see Caspari v. Bohlen, 114 S. Ct. 948, 953 (1994).  If the respondent argues

20  that the petitioner seeks the benefit of a new rule, federal habeas courts must decide at the

21  outset whether Teague is implicated.  Id. at 953.  This is true regardless of whether the case is

22  governed by AEDPA.  Horn v. Banks, 122 S. Ct. 2147, 2151 (2002).

23

24        "[A] case announces a new rule if the result was not *dictated* by precedent existing at the

25  time the defendant's conviction became final."  Teague, 109 S. Ct. at 1070 (plurality opinion)

26  (emphasis in original).  A rule may be "new" either because the decision relied upon by the

27  habeas petitioner announced a new rule after his conviction became final, or because the habeas

28  petitioner seeks to apply a prior decision's "old rule" to a novel setting, such that relief would

1  create a new rule by extending precedent.  Stringer v. Black, 112 S. Ct. 1130, 1135 (1992).

2  Circuit court holdings suffice to create an "old" rule under Teague.  Leavitt v. Arave, 383 F.3d 809,

3  819 (9th Cir. 2004) (per curiam); Bell v. Hill, 190 F.3d 1089, 1091-92 (9th Cir. 1999); see also

4  Williams v. Taylor, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J.) ("With one caveat, whatever

5  would qualify as an old rule under our Teague jurisprudence will constitute 'clearly established

6  Federal law, as determined by the Supreme Court of the United States' under § 2254(d)(1). . . .

7  The one caveat . . . is that § 2254(d)(1) restricts the source of clearly established law to this

8  Court's jurisprudence.").

9

10  Respondent argues that Petitioner's claim is Teague-barred, because the Supreme Court

11  has never held that failure to bifurcate trial on a gang enhancement allegation implicates due

12  process.  (Answer at 6-7.)  For purposes of a Teague analysis, the Court considers not only

13  Supreme Court precedent but also Ninth Circuit precedent prior to the date the petitioner's

14  conviction became final.  See Leavitt, 383 F.3d at 810; Bell, 190 F.3d at 1091-92.  As discussed

15  above, there is a line of Ninth Circuit cases holding that joinder of counts may violate due process

16  if it renders a defendant's trial fundamentally unfair, see Davis, 384 F.3d at 638; Sandoval, 241

17  F.3d at 771-72; Bean, 163 F.3d at 1086; Featherstone, 948 F.2d at 1503, and the principles

18  enunciated in those cases have been applied to claims challenging a trial court's refusal to

19  bifurcate gang enhancement allegations, see, e.g., Easter v. Foulk, 14-cv-00732-SAB-HC, 2015

20  WL 402075, at *30 (E.D. Cal., Jan. 29, 2015); Clark-Johnson, 13-cv-2333-JKS, 2014 WL 4377913,

21  at *6 (E.D. Cal., Sept. 3, 2014); Amante v. Virga, C 11-00975-SBA (PR), 2014 WL 4967006, at *

22  17 (N.D. Cal., Sept. 30, 2014); Morrison v. Denny, EDCV 12-1615-GAF (PJW), 2014 WL 2013393,

23  at *7 (C.D. Cal., Apr. 8, 2014).  Thus, a finding that the trial court's refusal to bifurcate the gang

24  enhancement violated due process would not constitute a new rule of law for Teague purposes.

25  The Court, therefore, rejects Respondent's Teague argument.

26  ///

27  ///

28  ///

1
2
3

**E.    The State Court Did Not Unreasonably Apply Clearly Established Federal Law.**

4      Federal habeas relief is available only for violations of the Constitution or laws or treaties
5   of the United States.  *See* 28 U.S.C. § 2254(a); Estelle v. McGuire, 112 S.Ct. 475, 480 (1991) ("In
6   conducting habeas review, a federal court is limited to deciding whether a conviction violated the
7   Constitution, laws, or treaties of the United States.").  To the extent Petitioner contends that the
8   trial court erred under California law by failing to bifurcate trial of the gang enhancement
9   allegation, he has not stated a claim cognizable on federal habeas review.  *See* Park v. California,
10  202 F.3d 1146, 1149-50 (9th Cir. 2000) (violation of California law governing joinder is not
11  cognizable in federal court).

12

13     As for Petitioner's due process claim, AEDPA forecloses habeas relief.  The Supreme Court
14  has never held that a refusal to bifurcate trial of a gang sentencing enhancement implicates a
15  defendant's due process rights.  On the contrary, it has held that due process does not require
16  bifurcation of a recidivist sentence enhancement.  Spencer, 87 S. Ct. at 654-55.  Moreover, the
17  Ninth Circuit has held that there is no clearly established federal law within the meaning of AEDPA
18  setting forth constitutional standards for severance of counts or defendants.  *See* Collins, 603 F.3d
19  at 1132-33 (rejecting the argument that Lane provides clearly established federal law in this area);
20  Grajeda v. Scribner, 541 Fed. Appx. 776, 778 (9th Cir. 2013) ("The Supreme Court has not held
21  that a state or federal trial court's denial of a motion to sever can, in itself, violate the
22  Constitution."); *accord* Hollie v. Hedgpeth, 456 Fed. Appx. 685, 685 (9th Cir. 2011) ("The
23  Supreme Court has never held that a trial court's failure to provide separate trials on different
24  charges implicates a defendant's right to due process.").  Because there is no Supreme Court
25  precedent in Petitioner's favor, the California Court of Appeal could not have unreasonably applied
26  clearly established federal law when it rejected this claim.  *See generally* Wright v. Van Patten,
27  128 S. Ct. 743, 747 (2008) (when Supreme Court cases "give no clear answer to the question
28  presented, let alone one in [petitioner]'s favor," a state court cannot have unreasonably applied

1    clearly established federal law).

2

3         Furthermore, even assuming, *arguendo*, that Petitioner could obtain habeas relief under

4    AEDPA upon a showing that the failure to bifurcate the gang enhancement rendered his trial

5    fundamentally unfair, Petitioner cannot make such a showing.  The requisite level of prejudice is

6    reached only "if the impermissible joinder had a substantial and injurious effect or influence in

7    determining the jury's verdict."  Davis, 384 F.3d at 638 (quoting Sandoval, 241 F.3d at 772).  In

8    evaluating prejudice, courts focus particularly on the cross-admissibility of evidence and the

9    dangers of "spillover."  Davis, 384 F.3d at 638.

10

11        Here, much of the gang evidence was cross-admissible to prove the robbery charge.  Under

12   California law, gang evidence may be relevant to establish "identity, motive, modus operandi,

13   specific intent, means of applying force or fear, or other issues pertinent to guilt of the charged

14   crime."  Hernandez, 33 Cal.4th at 1049.  At the very outset of the robbery, Petitioner asked the

15   victim, "Where are you from?" (2 Augmented Reporter's Transcript ("ART") 46, 48.)   The

16   prosecution's gang expert, Detective Tripp, testified that "Where are you from?" is a standard

17   gang challenge, which may lead to assault or homicide depending on the answer.  (3 ART 634.)

18   The victim responded that he did not "gang bang," showing that he understood he was dealing

19   with gang members.  (2 ART 48.)  He later implored Petitioner and his accomplice to let him go,

20   again telling them that he did not gang bang.  (2 ART 56.)  In addition, the victim testified that

21   Petitioner's accomplice checked him for tattoos and forced him to repeat the phrase "Fuck NHP

22   [Neighborhood Piro]" several times.  (2 ART 50- 52, 57-59.)  This gang evidence was relevant to

23   prove the fear element of robbery.  The victim testified to his extreme fear (2 ART 55), and a

24   rational jury could infer that the robbers' apparent suspicion the victim was a rival gang member

25   contributed to his fear.

26

27        The gang evidence was also relevant to establish motive.  *See* Hernandez, 33 Cal.4th at

28   1049; *see also* Windham v. Merkle, 163 F.3d 1092, 1103-04 (9th Cir. 1998) (admission of gang

                                             14

1   evidence did not violate due process when evidence was relevant to motive for crime).  Detective

2   Tripp testified that a gang member will commit a robbery to "put in work" for the gang, and will

3   receive recognition from fellow gang members for committing a crime.  (3 ART 629-30.)  He

4   testified that Petitioner was a member of Inglewood 13, a rival of Neighborhood Piru.[2]  (3 ART

5   650, 660.)

6

7           Thus, this is not a case where the failure to bifurcate allowed "evidence . . . to be

8   introduced in a trial where the evidence would otherwise be inadmissible."  Sandoval, 241 F.3d

9   at 772.  The gang evidence was relevant to prove the robbery as well as the gang enhancement,

10  and the trial court instructed the jury with CALCRIM No. 1403 regarding the limited purpose for

11  which it could be used.  (CT 145-46.)  The jury is presumed to follow its instructions.  See Weeks

12  v. Angelone, 120 S. Ct. 727, 733 (200); Richardson v. Marsh, 107 S. Ct. 1702, 1709 (1987).

13  Under these circumstances, Petitioner has not shown that the trial court's refusal to bifurcate the

14  gang enhancement allegation resulted in prejudice so great as to deny him his right to a fair trial.

15

16          Accordingly, for all of these reasons, the state court's rejection of this claim was not

17  contrary to, or an unreasonable application of, clearly established federal law.  Under Section

18  2254(d)(1), federal habeas relief based upon Ground Two is precluded.

19

20  **II.    GROUND THREE DOES NOT WARRANT FEDERAL HABEAS RELIEF**.

21

22          In Ground Three, Petitioner contends that defense counsel was ineffective for failing to

23  object to Detective Tripp's testimony that members of Petitioner's gang had murdered police

24  officers.  (Petition at 6, Exs.)

25

26  _____

27     [2]     When Petitioner testified, he admitted being an Inglewood 13 member but said that
    he had not associated with other gang members for years.  (5 RT 1835, 1863.)  This was a matter
28  for the jury to decide.

1

## A.   <u>Background</u>

2

3        Detective Tripp testified, among other things, that members of Petitioner's gang, Inglewood

4    13, had shot at and murdered police officers.  (3 ART 645.)  Specifically, he testified as follows:

5

6        [Prosecutor]: And we talked about this a little bit, but what kinds of crimes were

7        committed by Inglewood 13 gang members on the cases that you personally had

8        worked on or assisted?

9

10       [Tripp]: They had committed crimes.  They murdered police officers.  They shot.

11

12       [Defense counsel]: I give a continuing objection to the narrative.

13

14       [Court]: Overruled.

15

16       [Tripp]:  They have murdered police officers.  They have shot at police officers.

17       They have shot one of our police officers.  They possess narcotics.   They sell

18       narcotics.  They possess weapons.  The transport weapons.  They fight with the

19       police.  They fight with rival gang members.

20

21           They have murdered rival gang members.  They have attempted to murder

22       rival gang members.  They have attempted to murder police officers.  They have

23       robbed people.  They have burglarized and committed various other crimes.

24

25    (3 ART 645.)

26    ///

27    ///

28    ///

1

**B.**   <u>**The Applicable Clearly Established Federal Law**</u>

2

3       The Sixth Amendment guarantees the effective assistance of counsel at trial.   *See*

4   <u>Strickland v. Washington</u>, 104 S. Ct. 2052, 2063 (1984).  To establish ineffective assistance by

5   his counsel, Petitioner must demonstrate both that: (1) counsel's performance was deficient; and

6   (2) the deficient performance prejudiced his defense.  *Id.* at 2064-68.  As both prongs of the

7   <u>Strickland</u> test must be satisfied to establish a constitutional violation, failure to satisfy either

8   prong requires that an ineffective assistance claim be denied.  *See id.* at 2069 (no need to address

9   deficiency of performance if prejudice is examined first and found lacking); <u>Rios v. Rocha</u>, 299

10  F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the *Strickland* test obviates the

11  need to consider the other").

12

13      The first prong of the <u>Strickland</u> test -- deficient performance -- requires a showing that,

14  in the light of all the circumstances, counsel's performance was "outside the wide range of

15  professionally competent assistance." <u>Strickland</u>, 104 S. Ct. at 2066; *see also* <u>Richter</u>, 131 S. Ct.

16  at 788 (the "question is whether an attorney's representation amounted to incompetence under

17  'prevailing professional norms,' not whether it deviated from best practices or most common

18  custom").  Judicial scrutiny of counsel's performance "must be highly deferential," and this Court

19  must guard against the distorting effects of hindsight and evaluate the challenged conduct from

20  counsel's perspective at the time in issue.  <u>Strickland</u>, 104 S. Ct. at 2065; *see also* <u>Wiggins v.</u>

21  <u>Smith</u>, 23 S. Ct. 2527, 2536 (2003) (the first <u>Strickland</u> prong is a "context-dependent

22  consideration of the challenged conduct as seen 'from counsel's perspective at the time'").  There

23  is a "strong presumption that counsel's conduct falls within the wide range of reasonable

24  professional assistance." <u>Strickland</u>, 104 S. Ct. at 2065; *see also* <u>Pinholster</u>, 131 S. Ct. at 1403.

25

26      The second prong of the <u>Strickland</u> test -- prejudice -- requires showing a "reasonable

27  probability that, but for counsel's unprofessional errors, the result of the [trial] would have been

28  different." <u>Strickland</u>, 104 S. Ct. at 2068.  A reasonable probability is a probability "sufficient to

1  undermine confidence in the outcome." *Id.* "The likelihood of a different result must be
2  substantial, not just conceivable." Richter, 131 S. Ct. at 792. The court must consider the totality
3  of the evidence before the jury in determining whether a petitioner has satisfied this standard.
4  Berghuis v. Thompkins, 130 S. Ct. 2250, 2264 (2010).

5

6  "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when
7  the two apply in tandem, review is 'doubly' so." Richter, 131 S. Ct. at 788 (citations omitted); *see*
8  *also* Knowles v. Mirzayance, 129 S. Ct. 1411, 1420 (2009) (review of a Strickland claim pursuant
9  to Section 2254(d)(1) is "doubly deferential"); Gentry v. Sinclair, 705 F.3d 884, 899 (9th Cir. 2013)
10 ("when a petitioner raises a habeas claim under *Strickland*, he must surmount two highly
11 deferential standards of reasonableness"), *cert. denied* 134 S. Ct. 102 (2013). To succeed on an
12 ineffective assistance of counsel claim governed by Section 2254(d), "it is not enough" to
13 persuade a federal court that the Strickland test would be satisfied if a claim "were being analyzed
14 in the first instance." Bell v. Cone, 122 S. Ct. 1843, 1852 (2002). It also "is not enough to
15 convince a federal habeas court that, in its independent judgment, the state-court decision applied
16 *Strickland* incorrectly." *Id.* Rather, the petitioner must show that the state court "applied
17 *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.; see also* Richter,
18 131 S. Ct. at 788 (the "question is not whether counsel's actions were reasonable," but rather,
19 "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential
20 standard"). "[B]ecause the *Strickland* standard is a general standard, a state court has even more
21 latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance,
22 129 S. Ct. at 1420; *see also* Richter, 131 S. Ct. at 788 (given the general nature of the Strickland
23 standard, "the range of reasonable applications [of the Strickland standard] is substantial").

24

25 **C.    The State Court Did Not Unreasonably Apply Clearly Established**
26 **Federal Law.**

27

28 The California Court of Appeal rejected Petitioner's ineffective assistance claim under the

1  prejudice prong of <u>Strickland</u>, stating that it was unnecessary to address whether defense
2  counsel's performance was deficient. (Lodg. No. 8 at 11.) It stated:

4        Chapman identified [Petitioner] as the man who held the shotgun during the
5        robbery on four separate occasions: at the field identification, the line-up, the
6        preliminary hearing and trial. When [Petitioner] was detained shortly after the
7        robbery, he was in possession of a $50 bill, which Chapman testified was given to
8        [Petitioner] by the accomplice, and a sealed cigarette pack of the brand taken from
9        Chapman. A knife resembling the one used in the robbery and a bag of Popeye's
10       food were recovered from the car in which [Petitioner] was riding at the time of his
11       detention. In light of this overwhelming evidence of [Petitioner]'s guilt, he cannot
12       show "'that there is a reasonable probability that, but for counsel's unprofessional
13       errors, the result of the proceeding would have been different' . . ." [citation
14       omitted].

16 (Lodg. No. 8 at 11.)

18       The California Court of Appeal's analysis and conclusion are entirely reasonable. Under
19 <u>Strickland</u>, it is unnecessary to address whether counsel's performance was deficient if the court
20 first examines the prejudice prong and finds it lacking. <u>Strickland</u>, 104 S. Ct. at 2069. Petitioner
21 cannot show that the result of his trial would have been different if defense counsel had objected
22 to testimony that members of his gang had shot police officers, or had sought its exclusion. <u>Id</u>.
23 at 2068. Petitioner presented a misidentification defense at trial. (5 ART 2190-99; RT 37-50.)
24 However, the evidence that he was one of the robbers was overwhelming. The victim identified
25 him at trial as the robber with the shotgun. (2 ART 62.) The victim also identified Petitioner at
26 a field identification conducted shortly after the robbery, at an in-person lineup, and at the
27 preliminary hearing. (2 ART 66, 77-79, 83.) In addition, the victim identified the getaway car,
28 in which Petitioner was arrested. (2 ART 66, 348.) When Petitioner was arrested, items

1    corresponding to items taken from the victim were found in the car, including an unopened pack

2    of cigarettes of the same brand, a $50 bill in Petitioner's pocket, and a bag of food.  (2 ART 43-44,

3    48-49, 76-77, 347-48, 358-59, 377.)  A knife corresponding to the knife wielded by Petitioner's

4    accomplice was also found in the car and was identified by the victim at trial.  (2 ART 73, 362.)

5    Given the weight of evidence against Petitioner and the jury's rejection of his alibi defense, there

6    is no reasonable likelihood that the jury would have reached a different result had it not been

7    exposed to Detective Tripp's testimony that Inglewood 13 members had murdered police officers.

8    Strickland, 104 S. Ct. at 2068; see Richter, 131 S. Ct. at 792 (likelihood of a different result must

9    be substantial).  At the very least, the California Court of Appeal's conclusion that Petitioner had

10   not shown prejudice was not an objectively unreasonable application of Strickland.  See Richter,

11   131 S. Ct. at 792.

12

13   Accordingly, the state court's rejection of this claim was not contrary to, or an unreasonable

14   application of, clearly established federal law.  As a result, under Section 2254(d)(1), Ground

15   Three does not warrant federal habeas relief.

16

17   **III.    PETITIONER IS NOT ENTITLED TO AN EVIDENTIARY HEARING.**

18

19   On January 15, 2015, Petitioner filed a request for an evidentiary hearing.  As Petitioner's

20   claims are governed by the Section 2254(d) standard of review, his request for an evidentiary

21   hearing is foreclosed. See Pinholster, 131 S. Ct. at 1398 (habeas review under Section 2254(d)(1)

22   is limited to the record before the state court that adjudicated the claim on the merits).  Moreover,

23   no evidentiary hearing is necessary, because the record clearly shows that Petitioner is not

24   entitled to habeas relief. See Landrigan, 127 S. Ct. at 1940.  Accordingly, Petitioner's request for

25   an evidentiary hearing is denied.

26   ///

27   ///

28   ///

**ORDER**

For the foregoing reasons, IT IS ORDERED that:  the Petition is DENIED; and this action is dismissed with prejudice.

In addition, pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court has considered whether a certificate of appealability is warranted in this case.  *See* 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 484-85, 120 S. Ct. 1595, 1604 (2000).  The Court concludes that a certificate of appealability is unwarranted, and thus, a certificate of appealability is DENIED.

**LET JUDGMENT ENTER ACCORDINGLY**.

DATED:  March 30, 2015

_Margaret A. Nagle_

_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE